## RANSOM *vs.* THE STATE OF CONNECTICUT.

Lost goods may be the subject of larceny, and should receive the same protection, from the civil, and criminal law, as goods in any other situation.

But the finder of lost goods, who takes possession of them, not intending to steal them at the time of the original taking, is not rendered guilty of larceny, by any subsequent felonious intention to convert them to his own use.

Therefore, where, on the trial of an indictment, for stealing a pocket-book, and sundry bank bills, which had been lost on the highway, the judge instructed the jury, that if the defendant, at the time he found the property, knew, or had the means of knowing the owner, and did not restore it to him, but converted it to his own use, he was guilty of larceny; it was held a misdirection,—because, if the defendant, at the time he took possession of the property, meant to act honestly, with regard to it, no subsequent felonious intention to convert it to his own use, could render him guilty of larceny.

THIS was an information, brought to the county court, against Robert Ransom, for theft, charging him with having stolen a pocket-book and various bank-bills, amounting to the sum of forty-three dollars,—the property of Charles H. Cooper.

The defendant pleaded not guilty, and, upon the trial to the jury, the prosecutor introduced evidence to prove, that, on the 28th day of April, 1851, the pocket-book and money described in the information, were lost on the public highway, in the town of Montville, near the inn of Russell Sheldon; that within two hours after said property was so lost, it was found, at the place where lost, by the defendant. About the time the defendant found said property, the said Cooper made known at said inn, that he had lost the same, and publicly offered a reward for its recovery and restoration. The defendant used no means, by inquiry or otherwise, to ascertain who was the owner of said property, but wholly concealed the fact, that he had found it, and all the knowledge he had in relation to it, and converted said property to his own use.

There was no mark upon the property, which indicated

who the owner was; nor was there any evidence except that furnished by the facts aforesaid, tending to prove that, at the time the defendant found said property, he knew, or had the means of knowing, the owner.  The counsel for the defendant thereupon requested the court to charge the jury, that if the defendant, at the time he found said property, honestly believed it to be his, by right of finding, he could not be found guilty.  But the court omitted so to charge the jury.

The counsel for the defendant further claimed, and requested the court to charge the jury, that unless the defendant, at the time he found the property, knew, or had the means of knowing the owner, by marks upon it, or other information at the time, he could not be found guilty. The court did not so charge the jury, but charged them that, " if the defendant, at the time he found the property, knew, or had the means of knowing the owner, and did not restore it to him, but converted it to his own use ; or, if the defendant, at the time he found the property, did not know the owner, still, if he then determined to convert the property so found to his own use, and to deprive the owner of it, at all events, even should he discover the owner before he had so converted it, or any part of it, and afterward concealed said property, and appropriated it to his own use, he was guilty of larceny.

The jury found the prisoner guilty, and the court rendered judgment accordingly.  The prisoner's counsel filed a bill of exceptions, and thereupon, by motion in error, brought the record before the superior court for revision ;  and the question arising on such motion was referred to this court for advice.

*Goddard* and *Park*, in support of the motion, contended, 1. That the charge was erroneous, inasmuch as it gave the jury to understand, that the intent with which the property was taken, was of no consequence, and that it was the subsequent intent of the party, entirely, which constituted the

crime; whereas the felonious intent is the essence of larceny, and must exist at the time of taking the property. If it does not then exist, no subsequent acts can render the taking felonious. 2 Stark. Ev., 826. Rosc. Cr. Ev., 541. 3 Chitt. Cr. L., 926. 2 Sw. Dig., 312.

2. The accused must know, or have the means of knowing the owner, at the time of the finding. *State* v. *Weston*, 9 Conn. R., 527. *People* v. *Cogdell*, 1 Hill, 94. *People* v. *Anderson*, 14 Johns., 294. 5 Kin. Law Comp., 157. Archbold Cr. L., 173.

3. The statute prescribes the course to be taken by the finder of personal property, and inflicts a forfeiture, for noncompliance. Stat. 1849, p. 625.

*Wait* and *Halsey*, contra, contended, 1. that although it is laid down in the earlier books, that where the finder of lost goods converts them to his own use, it is no felony, still the rule must now be understood, with the qualification, that there was no fraudulent intent. Thompson, Ch. J., 14 John., 301. *People* v. *M'Garren*, 17 Wend., 460. And the modern authorities are to the effect, that if the finder of lost property, not abandoned, knows, or has the means of knowing the owner, and converts it to his own use, he may be guilty of larceny. *State* v. *Weston*, 9 Conn. R., 527. 6 Am. Com. L., 392. 2 Russ. on Crimes, 14.

2. It should be left to the jury, to find the intention of the party, in taking the property. Roscoe, 538. *Rex* v. *Pope*, 25 E. C. L., 432. *State* v. *Jenkins*, 2 Tyler, 379. 2 Russ., 14.

3. The court is not bound to instruct the jury, in the precise form in which it is put by counsel, but only in such manner as comports with the real merits of the case. *Pitts* v. *Whitman*, 2 Story, 609. *Churchill* v. *Rosebeck*, 15 Conn. R., 359. *Williams* v. *Cheeseborough*, 4 Conn. R., 356.

STORRS, J.   It must be assumed, on this motion, that the goods, which the defendant was charged with having stolen, were, by the owner, lost, in the ordinary sense of that term, that is, casually, and not in a manner to indicate, that he intended to abandon or part with his property in them; and the first question made by the defendant, and which was involved in the charge below, is, whether such goods can, under any circumstances, be the subject of larceny.   We are of opinion, that both on principle, and on a just consideration of the authorities, there is no difference, between lost goods and those in any other situation : and justice and public policy require, that both should be equally protected, by the criminal and the civil law.

The most approved definition of larceny is, the wrongful or fraudulent taking and carrying away, by any person, the mere personal goods of another, from any place, with the felonious intent to convert them to his (the taker's) own use, and make them his property, without the consent of the owner.   2 East C. L., 553.   Each branch of this definition is strictly, and according to the meaning which has been uniformly attached to it, by judicial construction, applicable, as well to goods thus lost, as to any other.   The owner, by losing them, is not divested of his property in them, nor is his title to them in the least degree impaired; it remains in him absolutely and to all intents, as before.   There is no difficulty in describing the ownership of it, in the indictment, according to the established rules of framing that instrument.   The name of the owner must be stated, if it is known, and if not, it may be alleged to be the property of some person unknown.   Nor is there any difficulty, arising out of the established principle, that, to constitute larceny, the taking must be a trespass.   There can be no doubt, that trespass may be maintained for a fraudulent taking and conversion of goods found.   As remarked by Parke, B., in delivering the judgment of the court in *Merry* v. *Green,* (7 M. & W., 623,) " If the finder, from the circumstances of

Ransom *v*. The State.

the case, must have known who was the owner, and, instead
of keeping the chattel for him, means, from the first, to ap-
propriate it to his own use, he does not acquire it, by a
rightful title, and the true owner might maintain trespass."
And this principle is established, by the numerous modern
cases of conviction for larceny, where the property was
obtained by the prisoner, by finding. In the case of *The*
*People* v. *Anderson*, (14 Johns., 294.) where a majority of
the court seem to have gone the whole length of deciding,
that the finder of lost goods can not, under any circumstan-
ces, be guilty of larceny, they appear to have come to that
conclusion, on the ground, that where a person comes to the
possession of property in that manner, no fraud is practiced
on any one, in first acquiring the possession,—that the very
nature of the case excludes a premeditated intention to steal
it,—that therefore, the taking of it is not a trespass,—and
hence, that it can never be a question, whether one who has
found a chattel, intended to steal it; and they therefore
conclude, that in the case of such finding, and a subsequent
conversion by the finder to his use, the same test can not be
applied, in order to ascertain the intention with which it was
first taken, as is applied, where a person has feloniously ap-
plied for, and obtained goods, under the pretence, that he
would use them for a certain specified purpose, and then
has converted them to his own use. This reasoning
appears to proceed on the ground of the impossibility,
in the case of finding, of the existence of a felonious inten-
tion, on the part of the finder, and of a want of possession
in the owner. With the greatest respect for the eminent
judges, by whom that decision was made, we can not accede
to this reasoning, but concur rather in the views of the able
judge who dissented. In each of those cases, there must,
undoubtedly, in order to constitute larceny, be a felonious
intention, in the original taking of the property, and that
taking must also be from the actual or constructive posses-
sion of the owner, either of which is sufficient. If therefore,

it be true, where there is a finding of lost property, either that it can not be taken by a finder, with a felonious intention, or that the actual and constructive possession of the owner, is devested, by his losing it, then one of the essential ingredients would be wanting. But we think that such a case is not necessarily attended with either of these consequences. As to the first, it is certainly not impossible, from the nature of the case, for a person who discovers the goods of another, which have been lost, in a highway or any other place, to form a fraudulent intention to appropriate them to his own use, and to take them with that intention. The place where they are found is immaterial, as it respects the offence of larceny, because the definition of it extends to the taking and carrying away of goods " from any place." There is nothing in the circumstance, that they were there, because they were accidentally lost, which any more precludes the possibility of forming such a fraudulent intention, than if they had been placed there designedly, by the owner. This is so far from being true, that the very fact, that they were apparently thus lost, and that their location is therefore unknown to the owner as well as others, and also that he is unknown or the loss undiscovered, may and often does constitute a motive, on the part of the finder, arising from the difficulty of detection, and hope of impunity, which induces him to take possession of the property, and convert it to his own use. Nor do we perceive the justness of the distinction, suggested between the case of goods, obtained fraudulently from the owner, and of those lost by him and afterward found and taken by another person, with a fraudulent intention, in the latter, to convert them to his own use, founded on the supposed want of possession, by the owner, in the latter case, and consequently, on the want of an unlawful violation of that possession. The possession of goods lost remains, in judgment of law, in the owner, because his property in them is not devested by losing them, and that property draws to it, constructively, the possession

Ransom v. The State.

of them. If, while they are thus in his possession, another person obtains possession of them fraudulently, as he does, if he takes them with an intention to deprive the owner of them, the latter possession is as tortious, as if he had obtained possession of them fraudulently, by delivery from the owner, in which case, such possession is clearly as tortious as if there had not been such a delivery. (2 East P. C. 693.) Indeed, the law considers, that there was no delivery; and as there is not even a color of authority, in the case of finding, the fraudulently taking possession of them is more palpably tortious than in the other case. And, such possession being tortious, the taking by which it was acquired is not a lawful taking, and therefore, trespass may be maintained by the owner against the taker, as has already been mentioned, although such possession of the latter is good, as between him and any other person, excepting the owner, as it is in every case, where the possession of goods is obtained tortiously.

We do not deem it necessary to examine minutely the authorities, on the question we are now considering. They certainly furnish a strong color for the opinion, which perhaps is generally entertained, that, anciently, goods casually lost, were not considered to be the subject of larceny, under any circumstances. We are, however, by no means satisfied that a critical and just examination of the old authorities will justify so broad a conclusion. The peculiar and somewhat loose forms of expression which they use, are certainly not absolutely inconsistent with the general current of modern authorities, in which it is stated, that those of an ancient date must not be understood in an unlimited sense; and Mr. East, who is one of the ablest writers on criminal law, appears to be of this opinion, (2 East C. L., 665;) although a previous expression of his seems to countenance an universal application of the principle, as laid down in the ancient books. But, whatever may have been the principle adopted anciently, the modern authorities, so far as we have

examined, with the single exception of the case decided by the supreme court of the state of New York, and the subsequent decisions on this point by the same court, uniformly hold, that goods lost are the subject of larceny: and the cases are very numerous, in which the finder of them has been convicted of that offence, on the ground of having feloniously taken them, in the first instance. A reference to them, in England and in this country, will be found in Russell on Crimes, 5th Am. from 3 Lond. ed., p. 11 to 19.

In prosecutions for the stealing of lost goods, the question, whether they were originally taken by the accused feloniously, *animo furandi*, is always a question of fact, and usually the principal one, for the jury to determine. For the purpose of showing such intention, inquiries as to his conduct, and all the circumstances preceding, accompanying, or following such taking, so far as they are relevant, are, as in all other cases of a similar accusation, admissible; and where the goods were obtained by finding, it is, from the nature of the case, very important to ascertain, whether the accused knew, or had the means of knowing, the owner, or endeavored to discover him, or made known or concealed his acquisition; and generally, how he conducted with the goods, in order to determine whether he intended originally to convert them to his own use, or to restore them to the owner. No arbitrary or artificial importance or effect is attached to these circumstances, when they are disclosed by the evidence; they are only evidential of the intention of the accused, and, as such, to be weighed by the jury. In many of the reported trials for larceny, where it appears, that the accused obtained possession of the goods by finding, the form in which the court instructed the jury was, that if the accused, knowing or having the means of knowing the owner, concealed them or converted them to his own use, he is guilty of the crime. It is, however, obviously not true, nor was such charge intended to be understood as laying down the legal proposition, that these circumstances con-

stitute the offence, or that one is necessarily guilty of it, where these facts exist. All that was intended by it was, that these circumstances furnish evidence, that the original taking was felonious, *animo furandi,* and that if there is no countervailing proof, they are sufficient, in point of weight, to warrant the inference of such an intention. It was not designed to be the declaration of a definition or legal principle, but only as the expression of the opinion of the judge, upon the strength of the evidence. We think that this mode of instructing the jury, in these cases, carries too much the appearance of giving to the circumstances in the case an arbitrary or artificial legal effect; and that, unless there is an entire absence of any explanatory or exculpatory evidence, in favor of the accused, which is seldom the case, it is calculated to mislead the jury, by withdrawing their minds from a due consideration of the evidence : and we therefore much prefer, as being more simple and intelligible to the jury, that, after they are informed of what constitutes the offence, these circumstances, together with any others bearing on the question, should be submitted to them, distinctly, as evidential only of the intention with which the goods were at first taken.

The plaintiff in error excepts to the charge of the county court, in this case, because it withdrew from the jury the question on which his guilt depended, namely, whether the goods were originally taken by him, with a felonious intention, and made it depend on an intention, which might have been formed subsequently. We think that, in this respect, the charge was erroneous. There is no doubt that, to constitute larceny in this case, an intention to steal must have existed, at the time of the original taking. If there was no such intention, when the first taking took place, but it was formed afterward, it would not be larceny; and the jury should have been so informed. But, consistently with the charge given, the accused might have been found guilty,

although he first took the goods honestly, and intended to return them to the owner, but subsequently changed his mind, and resolved not to restore them, but to convert them to his own use. The conviction was, by this charge, made to depend on the question, whether, with a knowledge or the means of knowledge, as to the owner, the accused converted the goods to his own use, after he first took them, and not upon the question, whether, at the time of such taking, he intended so to convert them. The subsequent conversion was evidence of the intention, with which they were first taken, but did not of itself, make that taking felonious. In *Regina* v. *Preston*, 5 Cox C. C. 390. 2 Den. C. C., 350. 8 Eng. Law & Eq. R., 589, (ed. of Little & Brown,) it was held to be a misdirection, on an indictment for stealing a bank note, which had been lost in a public street, but which had the name of the owner thereon, where the judge told the jury, that if the prisoner knew the owner, or had reasonable ground for believing that he could be found, *at the time when he first resolved to appropriate the note to his own use*, he was guilty of larceny ; on the ground, that if the prisoner, when he first took possession of the note, so as to know what it was, meant to act honestly with regard to it, no subsequent alteration of that intention, and conversion of the note to his own use, could render him guilty of larceny. The charge in the present case is obnoxious to the same objection, for the same reason.

The judgment complained of should therefore be reversed.

In this opinion the other Judges concurred.

Judgment reversed.