BAILEY v. THE STATE.

CRIMINAL LAW.—*Larceny.*—*Possession of Stolen Goods.*—The possession, by one not the owner, of personal property alleged to have been stolen, does not raise a presumption that such possessor is guilty of larceny, unless a previous larceny of the property has been established by proper evidence. If the larceny has been so established, and the exclusive possession of the property by one not the owner soon after the larceny has been proved, such possession, if not explained by direct evidence, or by attending circumstances, or by the character and habits of life of the possessor, or otherwise, is conclusive of his guilt as the thief.

SAME.—*Appropriating Lost Property.*—If personal property be lost by the owner and found by another person, and by the latter be taken and appropriated to his own use, the finder knowing the owner, he is guilty of larceny; but if he do not know, and have not the means of ascertaining, who is the owner, he is not guilty of larceny, even though he may not have advertised the property, and however reprehensible his conduct may be afterwards, in attempting to appropriate it to his own use.

From the Vanderburgh Circuit Court.

A. Iglehart and J. E. Iglehart, for appellant.

C. A. Buskirk, Attorney General, and J. B. Rucker, Prosecuting Attorney, for the State.

BIDDLE, J.—Indictment against the appellant, charging him with stealing a pair of shoes, of the property of Charles I. Moffett. Plea, not guilty; trial by jury; verdict, guilty, fine one dollar, imprisonment in the State's prison one year, disfranchisement one year. Motion for new trial overruled; appeal.

The insufficiency of the evidence to support the verdict, and errors of law in giving and refusing instructions to the jury, are the main points urged on behalf of the appellant.

The property, description, value, venue, etc., seem to be sufficiently established, but it is most earnestly contended that the body of the crime, the larceny, has not been proved.. Upon this point, Charles I. Moffett testified:

"My name is Charles I. Moffett. I live in Center township, Vanderburgh county, seven and a half miles from Evansville. On July 15th, 1876, I came to Evansville, and bought a pair of shoes from James S. Ricker, of the firm of H. & J. S. Ricker, Main street, Evansville, between Second and Third streets, for one dollar and fifty cents, and paid for them. They are the same shoes as those exhibited in court now. I know them by the mark put in them by George Newett, policeman. After buying the shoes, I left them at Ricker's for two or three hours. While they were there, I went out and took too much beer. I next saw the shoes next day, last Sunday, at police headquarters. I think I took the shoes from Ricker's to Kasson's saloon with me, but I can't swear it positively. I think I saw defendant at Kasson's saloon; can't swear positively; can't tell where I parted with the possession of the shoes; can't. swear positively that I had the shoes at Kasson's saloon. It all occurred at Vanderburgh county, Indiana. I recognized the shoes, after they were left at police headquarters,, by the way the laces were tied."

Cross-examined. "The shoes, when bought, were taken out of a box with other shoes similar in it. I recognized the shoes afterwards by the way Mr. Ricker tied the knot. of the leather laces. These shoes exhibited in court could not have been the shoes, unless the manner of tying them had been imitated purposely. Two pairs were not likely to have been alike. I do not know what became of the shoes; was under the influence of beer."

Henry Ayres testified:

"Am chief of police in Evansville. I saw the defendant. first last Saturday evening. One Muscowitz, second-hand dealer on Fourth street, came to me, and I went with him. The defendant was trying to sell him the shoes exhibited

here in court, the shoes pointed out by Charles Moffett, for one dollar. Muscowitz offered him fifty cents. I arrested the defendant, and asked him where he bought the shoes. He said, at a store on Main street. I went with him, and he pointed out as the place H. & J. S. Ricker's store. He said he bought them yesterday (Friday), then corrected himself and said Thursday. The wrapper was off, and the laces were not in the shoes then. They were left at Muscowitz's. I went up there after them, and they were brought down to Ricker's. Defendant was uncertain who he bought the shoes from, but afterwards pointed out Ludwig, who denied selling them. Mr. Ricker said, as he had shoes of that kind in the store, he might have bought them there, and did not feel like prosecuting the defendant, he not having missed the shoes. I then hunted up defendant the second time. Moffett was not along. Defendant said he sold the shoes on Water street. He took me to Speer's, on Water street, and showed me his place. He sold them for one dollar. I took them; he paid back Speer ninety cents, all the change he had. I locked him up. When I first saw the shoes, the strings were not tied as they are now. Defendant told me promptly where the shoes were, and claimed them as his shoes. He was at first uncertain who he bought them of, but afterwards pointed out Ludwig. He claimed the goods as his own and took me to Speer's."

Charles Ludwig testified:

"I am clerk for H. & J. S. Ricker. Saw defendant there; Ayres brought him there. Defendant said he bought the shoes of me. I did not remember it. I did not sell them to him. I never saw him before Ayres brought him there. I saw J. S. Ricker sell the shoes exhibited in court, to Moffett. These are the identical shoes. Moffett put some mark in the shoes; I saw him do it. Moffett came back to Ricker's store, two or three hours after he bought the shoes, and took the shoes away with him; I handed them to him. He was intoxicated when he came back and took the shoes."

Cross-examined. "There were other shoes in same box, similar to these shoes. When Ricker sold them, I stood about twelve feet off. I saw Moffett mark the shoes, when he bought them. I recognize them in that way. I can't swear positively about that. Shoes worth one dollar and seventy-five cents."

B. Speer testified:

"On Water street, Saturday last, at my store, I bought shoes (here in court) from defendant, at one dollar. He told me that the police had arrested him, but said they had told him to go, he might sell them if he wanted to."

Cross-examined. "I tied the laces in the shoes, as they are now. Defendant was open about the matter; the shoes were wrapped in a paper."

Here the State rested, and the defendant produced George Newett, a competent witness, who testified:

"I put the letter M in the shoes, this morning, in pencil. I think I only put three M's in them." Here witness was shown the shoes, and identified the M's he put in. "There are four in them, as shown to me now. Moffett has had the shoes since I marked them."

This was all the evidence given in the case, except some statements made by Moffett, called out by the appellant, which were not substantially different from his testimony, and therefore need not be given in this opinion.

After the introduction of the evidence and the close of the argument, the appellant asked the court to instruct the jury as follows:

1. "If the jury believe from the evidence that Charles I. Moffett, while under the influence of liquor, or otherwise, lost the shoes mentioned in the indictment, then you must acquit the defendant, even though you find that the defendant afterwards had possession of them."

The court refused to give this instruction, as asked, but gave it in a modified form, as follows:

"If the jury believe from the evidence that Charles I.

Moffett, while under the influence of liquor, or otherwise, lost the shoes mentioned in the indictment, then, under such circumstances that the finder could not identify the owner, you must acquit the defendant, even though you find that the defendant afterwards had possession of them."

We think the court committed no error in refusing the above instruction as asked, nor in giving it as modified, for reasons which will subsequently more fully appear in this opinion.

The second instruction asked by the appellant was in the following words:

2. "If you find from the evidence that no one but said Moffett testified in regard to the taking of said shoes, and if you believe that said Moffett does not know and cannot explain how he parted with their possession, then you must acquit the defendant, even if it appears that he afterwards had possession of them."

The court refused to give this instruction, "but read to the jury, in lieu thereof," from the opinion of this court, in the case of *Smathers* v. *The State*, 46 Ind. 447, our views upon a similar question, as expressed on page 451. We need not enlarge this opinion by copying within it what we decided in that, to which we still adhere. In this view—and we think it covers the whole case—there was no error in refusing the second instruction, and none in reading from a former opinion of this court.

The record then informs us, that "the court further read to the jury the following, taken from Bicknell's Crim. Practice, p. 331:

"A person may be guilty of larceny by taking and converting to his use lost goods found by him. If he knows the owner, it is clearly larceny; as where a carpenter finds money secreted in a bureau given him to repair, if he convert it to his own use, it will be larceny. So, if a hackman convert to his own use a parcel, left by a passenger in his coach by mistake, it is larceny if he knew the owner, or if he took him up or put him down at any particular

place where he might have inquired for him. So, where there is a mark upon the property, by which the owner may be traced, and the finder, instead of restoring the property, converts it to his own use, such conversion amounts to larceny. So, where a person bought at auction a bureau, and found in it a secret drawer containing money, which he used, it was held that would be larceny, unless he had reasonable grounds for believing that he bought the bureau and its contents. But where the finder does not know the owner, and has nothing to indicate where the owner may be found, his appropriation of the goods will not be larceny, even although he has not advertised the goods. And the mere fact that he had secreted the goods, or denied finding them, will not make it larceny."

In our opinion, this instruction expresses the law, carefully and clearly stated; and it seems to us, in this case, that the court committed no error, either in giving or refusing instructions to the jury.

A more difficult question for us to decide is, does the evidence fairly sustain the verdict? We must adhere firmly to the principle of law, that the possession of property alleged to have been stolen is not a presumption of guilt against the possessor, unless a previous larceny of the property is established by proof; and the presumption of guilt will not arise until the larceny is proved by some proper evidence. In this case the evidence, aside from the conduct of the appellant, tends only very slightly to prove a larceny of the shoes. The condition of Moffett, the owner of the shoes, was such, at the time, that he might very easily have mislaid, forgotten, or lost them, without remembering anything about them; and the same condition would make it very easy for any one to steal the shoes from him without his knowledge. But the conduct of the appellant, after he had obtained possession of the shoes, is open to very grave suspicions. His inability to readily account for how, when and where he obtained them, the transaction being so recent; his ultimate assertions that he bought them of Ludwig, which Ludwig denies; and his.

fixing the time of the purchase on Thursday, while they remained in the possession of the merchant until Saturday afterwards, before they were sold to Moffett; the fact that the laces were taken out of the shoes, and the sale of them by appellant so soon afterwards, much below their value, are all indices of guilt, and show a line of conduct in reference to the shoes altogether out of the ordinary course of men's affairs in the regular and honest transactions of life; yet all of this may be true, and the appellant innocent of the crime charged against him. If Moffett lost his shoes—a supposition not at all unlikely, considering his condition at the time—and the appellant merely found and took them, not knowing, and not having the means to find out, who owned the shoes, he cannot be guilty of larceny, however reprehensible his conduct might be afterwards, in attempting to appropriate the shoes; and his conduct may be interpreted as meaning nothing more than an attempt to fortify his claim to the shoes he had found, instead of stolen.

We are of the opinion that the conviction is not a safe one under the law.

The judgment is reversed; cause remanded, with instructions to grant the motion for a new trial, and for further proceedings.

Order for a return of the prisoner.