Bowen *et al. v.* Sullivan, Guardian.

———

## Bowen et al. *v.* Sullivan, Guardian.

LOST BANK-BILL.— *Rights of Finder.— Master and Servant.—Bank-Bill Found by Servant Among Master's Property.*—An employee in a paper manufactory, while engaged in assorting a bale of old papers purchased by the proprietor for manufacture, found certain lost genuine bank-bills enclosed in a clean, unmarked and undirected envelope, which had formed part of such bale, and, to ascertain whether they were genuine, delivered them to the proprietor, upon his promise to return them, whereupon he retained the same, notwithstanding the demand of the finder, who instituted an action for their value.

Bowen *et al. v.* Sullivan, Guardian.

*Held,* that the plaintiff was entitled to recover the value of the bank-bills, as against the defendant.

From the Carroll Circuit Court.

*J. Applegate,* for appellants.

*C. R. Pollard,* for appellee.

PERKINS, J.—Ellen Quinn, a minor, found two fifty-dollar bank-bills on the premises of the appellants, and handed the same to them, requesting to be informed if they were genuine. Appellants retained the bills, declining to return them to the finder, on demand.

The appellee, Catherine Sullivan, the guardian of said minor, instituted this suit to recover the value of said bills.

Issues were formed, and tried by a jury; verdict for the plaintiff; motion for a new trial overruled, and judgment on the verdict.

The pleadings, on which the cause was tried, were good on demurrer, but some of them might have been subject to a motion to make more certain. *Hart* v. *Crawford,* 41 Ind. 197; *Doman* v. *Bedunnah,* 57 Ind. 219; *Wilson* v. *Kelly,* 58 Ind. 586.

As bearing on this part of the case, we cite *Tancil* v. *Seaton,* 28 Grat. (Va.) 601, where it is decided, that "The finder of a bank-note, as against a bailee without reward, to whom he delivers it to be kept for such finder, has such a possessory interest in the note as entitles him to recover the same of the bailee, on his refusal to redeliver it to the finder on request, and in the absence of any claim of the rightful owner made known by him to such bailee."

On the trial, the court, of its own motion, gave to the jury the following instructions, which were all that were given in the cause. They were given by the Hon. T. B. Ward, who presided at the trial of the cause as special judge:

" The first paragraph of the complaint is upon an account for money alleged to have been had and received by the defendants, of the plaintiff's ward, for the use of said ward.

" The second paragraph of the complaint is not before you.

" The third and fourth paragraphs allege, in substance,, that the plaintiff's ward found two bank-notes, of the denomination and value of fifty dollars each, on the defendants' premises (in their paper-mill); that her said ward handed said notes to one of the defendants, to ascertain if they were genuine, and upon a promise that he would return them to her; that the defendants kept said notes and converted them to their own use; therefore she prays judgment, etc.

" The answer is in three paragraphs, the first of which is a general denial of the allegations of the first paragraph of the complaint.

" The second and third paragraphs of the answer aver, in substance, that the defendants are co-partners, engaged in the manufacture of paper, in Carroll county; that, for the purpose of their business, it is their custom to purchase rags of different colors and qualities; that the said bank-notes were purchased with other rags, in Kansas, by the defendants, and are their property; that the plaintiff's ward took said bank-notes from their premises, without right, but afterward returned them to the defendants.

" The burden of proof is upon the plaintiff. In order to entitle her to recover, she must prove the material allegations of her complaint by a preponderance of the testimony; that is, by a fair weight of the testimony. The finder of lost property is the owner of it as against every person except the loser, or real owner. If you believe from the evidence, that the plaintiff's ward found the said bank-notes in the defendants' paper-mill, and if you be-

lieve said bank-notes were lost property, you should find for the plaintiff. The primary question is, were the notes lost property? If they were, it can make no difference whether they were found upon the highway, in the defendants' paper-mill, or in their dwelling-house; the difference between the highway, the place of business or the dwelling-house (so far as this case is concerned), is a difference only as to the degree of privacy; the place of business is more private than the highway, and the dwelling-house is more private than the place of business.

"But, if the bank-notes were lost property and the plaintiff's ward found them, it does not matter where she found them; they belong to her as against every person but the loser, or real owner. But, if you believe from the evidence, that, as alleged in the third and fourth paragraphs of the answer, the defendants had purchased said bank-notes as rags, then they were not lost property, and you should find for the defendants.

"As I have already said to you, the plaintiff must make out her case by a preponderance of the testimony. You cannot indulge in any presumption in her favor, but you have a right to draw natural inferences from all the facts proven; and, if you believe from the evidence, that the said bank-notes were found by the plaintiff's ward among the rags or paper belonging to the defendants, in their mill, and that said bank-notes got there by accident, and were not placed there purposely by the person of whom the rags and papers were purchased by the defendants, and the defendants did not know they were among the rags when they made the purchase, then I instruct you that said bank-notes were lost property, and you should find for the plaintiff."

The evidence in the cause consisted of oral testimony.

Ellen Quinn's testimony was as follows:

"I am acquainted with the defendants. In May, 1876,

they were engaged in the manufacture of paper, about half a mile from Delphi. I am a half-sister of Anna Sullivan, who was working for the defendants in the spring of 1876. I went to the paper-mill of the defendants in the spring of 1876. I was not in their employ. My sister had been for a week or two. I found some money in the paper-mill of defendants, in May, 1876, on Wednesday. Up to that time I had never been in the employ of the defendants. I found the money in the mill, on the floor, in a clean envelope, not in a package. In about five minutes afterward I showed it to Charley Mc-Clane. He took it to Huchtenhouser to see if it was good, and Huchtenhouser took it to the defendant Abner T. Bowen. There were two fifty-dollar bills in the envelope. I found the envelope three or four feet from where the girls were assorting papers. There was no name or other mark upon the envelope. I threw the envelope back on the floor. The next morning I asked the defendant Abner T. Bowen for the money, and told him he promised to give it back. He did not give me the money, but offered to give me ten dollars, if I would be satisfied, which I refused to take. I asked him if he had bought this money or lost it. He said he had not. This money has never been returned to me. Charlie McClane was the first person I told about having found it. The defendant Abner T. Bowen got this money for the purpose of seeing whether it was good or not. He said it was genuine. I am sixteen years old."

And upon cross-examination this witness further testified:

"I found this money in the room of the paper-mill where they assorted old papers for the purpose of manufacturing the same into new paper. The room was about 15 by 30 feet. There were five persons engaged there at the time in assorting. The old papers are received in bales which are placed upon the floor, cut open, and the

contents taken out and put in screens. The persons then engaged there in assorting the papers were Sarah and Mary Alberts, Annie McClane, Mattie Kist and Alma Sullivan. I asked Abner T. Bowen if the money was good. He said it was. I asked him for it. He asked me, if I thought the money belonged to me. I told him I thought it did until the proper person came. I then asked him, if he had bought the money or lost it. He said no. I meant by that, if he claimed it as his property. He said he did not. I told him I would like to have it. He offered me ten dollars, and asked me if I would take that and be satisfied. I said I would not. The room where this money was found is the assorting room of the paper-mill, up-stairs. The envelope, in which it was, was nice, clean and new, and had no writing or mark upon it. There were papers scattered all over the floor when I found it. I don't think there was a space on the floor more than four inches square, not covered with old papers. I found this money about 3 o'clock in the afternoon, and when I picked it up was nearer to Annie McClane than any person else, and about three or four feet from her. There were three screens in this room and two persons working at each."

Abner T. Bowen, one of the defendants, and a witness for the defendants, testified as follows:

"Charlie and Huchtenhouser came to me together. Charlie said 'she wants the money back, even if it is not good.' Don't know that I said anything to him about returning it. The next morning I saw Ellen Quinn in the machine room. She said, 'what about the money?' I said, 'it is good money; who do you think this money belongs to?' She said she supposed it belonged to me, but thought she needed it more than I did. I asked her what she would do about it. She said, just as I said. I then offered her ten dollars. She shrunk back and refused to take it. Said I ought to give her at least half of it; if she had lost

one hundred dollars and any one had found it and brought it to her, she would have divided equally with them. She repeated several times that she needed it worse than I did. I said that had nothing to do with it. She said she ought to have thrown it in the papers, and it would have been ground up, and I never would have received any benefit of it. I said nothing about not having bought it. That is about what I said and would think about it. She said she found it in an envelope marked Kansas City. She was working for us that week and the week before, receiving wages for her labor. I never gave her any authority to take those bills from the place where they were found."

On cross-examination he further testified :

" If that money was found in a bale of papers, we had bought it and paid for it. Huchtenhouser kept the accounts with the girls in the assorting room, so I can not certainly say whether Ellen was in our employ the day the money was found. I did not know that money was there. We did not get it by accident. I think it was purchased with old paper. I think Ellen was working for us the day the money was found. I think I have a menorandum of the day the money was found, but can't now tell the day nor month. It was entered on our cash book, the day it was found. At the time I got the money I did not intend to give it back."

The testimony of the two foregoing witnesses represents the conflict in the testimony in the case on the part of the plaintiff and defendants.

There was no evidence that the envelope containing the money had been accidentally or carelessly laid down or dropped in the paper-mill by a visitor at the mill, so that the cases of *McAvoy* v. *Medina*, 11 Allen, 548, and *Lawrence* v. *The State*, 1 Humph. 227, are not applicable in the case at bar.

There was no evidence that the envelope was purchased

by special contract, including it and its contents, so that the case of *Merry* v. *Green,* 7 M. & W. 623, is not applicable.

Ever since the case of *Armory* v. *Delamirie,* 1 Strange, 505, in which a chimney-sweeper's boy, having found a jewel, left it with a goldsmith to ascertain what it was, was held entitled to recover it, the law has been steady and uniform that the finder of lost property has a right to retain it against all persons except the true owner. *Tancil* v. *Seaton,* 28 Grat. 601; *Lawrence* v. *Buck,* 62 Me. 275. And ordinarily the place of finding is immaterial. *Tatum* v. *Sharpless,* 6 Phila. 18, and cases cited.

The jury in the case now before this court might have found from the evidence that an envelope was picked up from the floor of the defendants' paper-mill by Ellen Quinn; was opened by her and found to contain two fifty-dollar bills; that the bills were taken by her and the envelope returned to the floor; that the envelope was purchased by the defendants at the rate of two and a half cents per pound, as waste paper, raw material, to be used in the manufacture of paper; that neither the seller of the envelope nor the buyer of it knew that it contained the bills in question, and only sold and bought and paid for the envelope; that the rightful owner of the money is still unknown. Had the notes or bills in question been lying upon the floor, unenclosed when found, the case would have fallen within most, if not all, the approved authorities.

The distinguishing feature of the case is, that the bills were found contained in an article of property which had been purchased by and belonged to the defendants. Did that fact carry with it the property in the bills in question?

The case more nearly in point than any other which has fallen under our observation is *Durfee* v. *Jones,* 11 R. I. 588, decided July 21st, 1877. DURFEE, C. J.

"The facts in this case are briefly these: In April, 1874,

the plaintiff bought an old safe and soon afterwards instructed his agent to sell it again. The agent offered to sell it to the defendant for ten dollars, but the defendant refused to buy it. The agent then left it with the defendant, who was a blacksmith, at his shop for sale for ten dollars, authorizing him to keep his books in it until it was sold or reclaimed. The safe was old-fashioned, of sheet iron, about three feet square, having a few pigeon-holes and a place for books, and back of the place for books a large crack in the lining. The defendant shortly after the safe was left, upon examining it, found secreted between the sheet-iron exterior and the wooden lining a roll of bills amounting to $165.00, of the denomination of the national bank-bills which have been current for the last ten or twelve years. Neither the plaintiff nor the defendant knew the money was there before it was found. The owner of the money is still unknown. The defendant informed the plaintiff's agent that he had found it, and offered it to him for the plaintiff; but the agent declined it, stating that it did not belong to either himself or the plaintiff, and advised the defendant to deposit it where it would be drawing interest until the rightful owner appeared. The plaintiff was then out of the city. Upon his return, being informed of the finding, he immediately called on the defendant and asked for the money, but the defendant refused to give it to him. He then, after taking advice, demanded the return of the safe and its contents, precisely as they existed when placed in the defendant's hands. The defendant promptly gave up the safe, but retained the money. The plaintiff brings this action to recover it or its equivalent."

The court held, that, as the purchase was of the safe, not the safe and its contents, the money was not embraced in the purchase.

"The plaintiff" (say the court) "claims that he is entitled

to have the money by the right of prior possession. But the plaintiff never had any possession of the money, except, unwittingly, by having possession of the safe which contained it. Such possession, if possession it can be called, does not of itself confer a right. The case at bar is in this view like *Bridges* v. *Hawkesworth*, * * 7 Eng. L. & Eq. 424. In that case, the plaintiff, while in the defendant's shop on business, picked from the floor a parcel containing bank-notes. He gave them to the defendant for the owner if he could be found. The owner could not be found, and it was held that the plaintiff as finder was entitled to them, as against the defendant as owner of the shop in which they were found. 'The notes,' said the court, 'never were in the custody of the defendant nor within the protection of his house, before they were found, as they would have been if they had been intentionally deposited there.' The same in effect may be said of the notes in the case at bar; for though they were originally deposited in the safe by design, they were not so deposited in the safe, after it became the plaintiff's safe, so as to be in the protection of the safe as his safe, or so as to affect him with any responsibility for them. The case at bar is also in this respect like *Tatum* v. *Sharpless*, 6 Phila. 18. There it was held, that a conductor who had found money which had been lost in a railroad car was entitled to it as against the railroad company."

It is also claimed in this case, that the finding of the money was a wrongful act, and that, therefore, the defendants (appellants) have a right to hold the money. We do not concur in this view. The defendants insist that Ellen Quinn, the finder, was in their employ as a rag-resorter, and that, therefore, what she found while so in their employ belonged to them.

The evidence would have sustained such a finding; and, in support of the verdict, perhaps we should presume in

favor of it. If she was so in the defendants' employ, the finding of the money was not wrongful. In the elaborate case of *Brandon* v. *Planters and Merchants' Bank of Huntsville*, 1 Stewart, 320, it was held that lost property found by a slave belonged to his master, but we have found no case to which this doctrine has been applied as between employer and employee. See *Tatum* v. *Sharpless*, and *Durfee* v. *Jones, supra.*

See, on this general subject, note to *Bailey* v. *The State,* 21 Am. Rep. 187; *Bailey* v. *The State,* 52 Ind. 462; *The N. Y. & Harlem R. R. Co.* v. *Haws,* 56 N. Y. 175.

An objection was made to the admission of certain testimony, but it is not noticed in the brief of counsel in this court, and is therefore treated as waived.

The defendants, by counsel, object to some part of an instruction. But the instructions are not numbered; and we cannot find one that is subject to the objection made. No instruction was asked by the defendants to supply any deficiency; and, as applicable to the evidence, we think the instructions were not liable to the defendants' objection.

It is claimed that the appellants, in purchasing the envelope containing the bills by weight, purchased the bank-bills in question. Their existence was unknown when the envelope was purchased, and their weight was so infinitesimally small, compared with their value, that we do not concur in this proposition. It is unreasonable.

The judgment is affirmed, with costs.