"White, J.
We find no ground in the record for reversing the judgment.
The first instruction asked was properly refused. It was-not necessary to the conviction of the accused that he-should, at the time of taking possession of the property, have known, or have had reason to believe he knew, the particular person who owned it, or have had the means of identifying him instanter. The charge asked was liable to this construction, and there was no error in its refusal.
The second instruction asked was substantially given in the general charge.
Larcen} may be committed of property that is casually lost as well as of that which is not. The title to the property, and its constructive possession, still remains in the owner; and the finder, if he takes possession of it for his own use, and not for the benefit of the owner, would be-guilty of trespass, unless tlie circumstances were such as to-show that it had been abandoned by the owner.
The question is, under what circumstances does such property become the subject of larceny by the finder ?
In Baker v. The State, 29 Ohio St. 184, the rule stated by Baron Park, in Thurborn’s case, was adopted. It was there laid down, that “ when a person finds goods that have actually been lost, and takes possession with intent to appropriate them to his own use, really believing, at the time, or having good ground to believe, that the owner can •be found,- it is larceny.”
It must not be understood from the rule, as thus stated, that the finder is bound to use diligence or to take pains in *50 making search for the owner. His belief, or grounds of belief, in regard to finding the owner, is not to be determined by the degree of diligence that he might be able to use to ¡accomplish that purpose, but by the circumstances apparent to him at the time of finding the property. If the property has not been abandoned by the owner, it is the subject of larceny by the finder, when, at the time he finds it, he has reasonable ground to believe, from the nature of the property, or the circumstances under which it is found, that if he does not conceal but deals honestly with it, the owner will appear or be ascertained. But before the finder can be guilty of larceny, the intent to steal the property must have existed at the time he took it into his possession.
There are cases in conflict with the foregoing view; but we believe it correct in principle, and well supported by authority. The Queen v. Glyde, 1 L. R. (C. C.) 139; Moore's case, Leigh & Cave’s C. C. 1; Regina v. Knight, 12 Cox, 102; Commonwealth v. Titus, 116 Mass. 43; Ransom v. The State, 22 Conn. 153; 2 Russ. Crimes, 9 Am. ed. (4 Eng.) 179, 180, and note there found to Thurborn’s case.
The case was fairly submitted to the jury ; and from an examination of the evidence, we find no ground for interfering with the action of the court below in refusing a new trial.

Judgment affirmed^.

Okey, J.
I do not think the plaintiff was properly convicted. A scavenger, while in the performance of his duties in cleaning the streets, picked up from the mud and water in the gutter, a roll of money, consisting of bank bills of the denominations of five, ten, and twenty dollars, and amounting, in the aggregate, to two hundred dollars. It had lain there several weeks, and the owner had ceased to make search for it. The evidence fails to show that the plaintiff had any information of a loss previous to the finding, and in his testimony he denied such notice. There was no max'k on the money to indicate the owner, nor was there any thing in the attending circumstances pointing to *51 ■one owner more than another. He put the money in his pocket, without calling the attention of his fellow-workmen to the discovery, and afterward, on the same day, commenced applying it to his own use.
No doubt the plaintiff was morally bound to take steps to find the owner. An honest man would not thus appropriate money, before he had made the finding public, and endeavored to find the owner. But in violating the moral obligation, I do not think the plaintiff' incurred ■criminal liability.
Baker’s case, 29 Ohio St. 184, was correctly decided. It is stated in the opinion, not only that when he took the goods he intended to appropriate them to his own use, hut that he had reasonable ground for believing that Alden was the owner. A passage from Regina v. Thurborn, 1 Den. C. C. 387, is cited in that case as containing a correct statement of the law. But a careful examination of Regina v. Thurborn will show that the court which rendered the decision would not have sustained this conviction; aud that case has been repeatedly followed in England and this country. R. v. Preston, 2 Den. C. C. 351; R. v. West, 6 Cox, 415 ; R. v. Dixon, 7 Cox, 35; R. v. Christopher, 5 Jurist, N. S., 24; R. v. Glyde, 11 Cox, 103; R. v. Knight, 12 Cox, 102; Tanner v. Com. 14 Grat. 635 ; People v. Cogdell, 1 Hill (N. Y.), 94; Lane v. The People, 5 Gilman, 305; The State v. Conway, 18 Mo. 321; 2 Lead. Or. Cas. 31; Bailey v. State, 52 Ind. 462.
The obligation, stated in the syllabus, that the finder must deal “ honestly ” with the money, is too indefinite; and the opinion contains no satisfactory explanation of it. This leaves both law and fact to the jury, without any rule to guide them. "What one jury might think was honest •dealing, another jury might think was the reverse. The ■adverb properly or rightfully would have been as certain.
Gilmore, C. J., concurs in the dissenting opinion.