LYALL *v.* STATE OF INDIANA.

[No. 30,652. Filed June 14, 1966.]

*Jay Arnold,* and *Kelley, Arnold & Kelley,* of Anderson, *James R. White,* of New Castle, and *Perry W. Cross,* and *Dennis & Cross,* of Muncie, for appellant.

*John J. Dillon,* Attorney General, and *Wilma T. Leach,* Deputy Attorney General, for appellee.

RAKESTRAW, C. J.—The appellant was charged by affidavit with concealing stolen property under Burns' Ind. Stat. Anno. § 10-3017 (1956 Repl.). After a trial by jury, he was found guilty of concealing stolen property of the value of more than $100 and was sentenced to the Indiana State Prison for a term of not less than one year nor more than ten years.

The case arose under an unusual set of circumstances. On November 23, 1962, two state policemen were patrolling the highways in search of some persons believed to be rustling cattle. They were contacted and told that a motorist had called to report that a truck had broken down across the highway. The location turned out to be in front of the appellant's barn. The truck contained a large load of metal bars which later turned out to be nickel anodes. At this time, there was some evidence that the appellant had given

a false name to the truck driver, and the appellant disclaimed any knowledge of where the metal had come from. Upon investigation, however, it appeared that the truck tracks went directly to the appellant's barn. In the appellant's barn there remained a few of the metal bars which were taken into custody by the officers and introduced into evidence in the case.

The metal bars, according to the evidence were bars of nickel mixed with some very small amounts of other metals which were shaped and tapped to be used in plating tanks in a process of nickel plating by electrolysis. They are referred to as anodes, because the electrical current enters the tank through the nickel bars when the plating process is in operation. The anodes involved were 60″ in length.

There was evidence from the manufacturer of the anodes as to the chemical contents of the anodes and as to certain "heat numbers" which were imprinted upon some of the anodes. From such analysis, there was evidence to indicate that the anodes had been shipped to Guide Lamp Division of General Motors Corporation in Anderson. There was also evidence that few if any other plants used such anodes in a 60″ length and that some of the anodes were made of a Nicaro nickel which contains a high iron content and could not be processed by other manufacturers of nickel anodes. The total weight of anodes found in the appellant's barn was about 26,000 pounds. There is no evidence as to how the nickel anodes got to the appellant's barn aside from the appellant's own testimony. He testified that some unidentified men had asked to put them in his barn for protection from the weather, and that he did not know where they came from. He also testified that he had been requested by men who had left the anodes to make arrangements for the sale of the anodes to the scrap metal dealers who were in the process of hauling them away at the time of the breakdown.

On appeal, the appellant relies upon the specification of his motion for a new trial that the verdict was not sustained

by sufficient evidence. In his brief, he argues only that there is insufficient evidence to show that the nickel anodes involved were stolen as charged in the affidavit.

The only evidence in the record which would indicate any possible relevance to whether or not the anodes were stolen was that given by two employees of the Guide Lamp Division. This evidence indicates that on February 19, 1959, it was reported that some anodes had been found outside the fence of the Guide Lamp plant. Upon investigation, it appeared that the fence was bulged out in one place, that some strands of barbed wire had been loosened and separated from the top, that some tracks led up to the fence from the inside and away from the fence on the outside, that there were indentations in the ground where bundles might have been dropped over the fence, and that there were some metal bands similar to those which hold together bundles of anodes. One of these witnesses testified that there were some 40″ anodes found at the scene. However, this testimony was later stricken by the court as irrelevant.

Subsequent to this finding, an inventory was taken, and this inventory revealed a shortage of 23,405 pounds of 60″ nickel anodes. The last inventory previous to that time had been in June, 1958. At other inventories, there had been shortages and overages in nickel anodes by weight, on one occasion a shortage of 3,000 pounds. There was no evidence whatever connecting the appellant to this incident referred to by the company employees, and no evidence showing that 60″ anodes were taken at that time.

> It has been held by this court that in order to establish a "stealing," larceny must be proved. *Gow* v. *State* (1946), 224 Ind. 519, 69 N. E. 2d 175.

There must be some substantial evidence that the property was "stolen." The mere fact that property is missing, without more, is not sufficient to establish a larceny. *Bruck* v. *State* (1963), 244 Ind. 466, 193 N. E. 2d 494.

The mere possession of missing goods is not sufficient to raise a presumption of guilt, even if the charge is larceny. In the case of *Bailey* v. *State* (1876), 52 Ind. 462, 467, the court set forth the following rule:

> "We must adhere firmly to the principle of law, that the possession of property alleged to have been stolen is not a presumption of guilt against the possessor, unless a previous larceny of the property is established by proof; and the presumption of guilt will not arise until the larceny is proved by some proper evidence. . . ."

In addition, it has been held that the rule that possession of stolen property soon after the commission of the larceny thereof, unless explained, is prima facie evidence of guilt of the person in whose possession the property is found does not apply to the offense of receiving stolen goods. *Bowers* v. *State* (1925), 196 Ind. 4, 146 N. E. 818.

The fact that the evidence strongly indicates that the nickel anodes involved were the property of Guide Lamp and were taken from Guide Lamp in some unauthorized fashion is not sufficient for a conviction in this case. Should there have been embezzlement rather than stealing, it is clear that a conviction of possessing stolen goods could not lie. *Gentry* v. *State* (1945), 223 Ind. 459, 61 N. E. 2d 641.

In the case of *Bruck* v. *State, supra,* at page 473, this court said the following:

> "We will not weigh the evidence on appeal, but we will review for the purposes of deciding, as a question of law, whether or not the evidence establishes the essential elements for a conviction. Neither the bare possibility of guilt, nor mere suspicion alone, is sufficient to warrant a conviction of larceny. There must be evidence of probative value upon each essential element of the crime charged to sustain a conviction. The evidence in this case fails to prove the corpus delicti, namely, a larceny. . . ."

The appellant was charged with concealing "stolen" property. The evidence relied upon by the state to justify a finding

that the property was stolen is at best merely suggestive. The fence incident is remote in time, is not identified with 60″ anodes, and is not connected with appellant. In our opinion it is insufficient to justify a conviction of the offense charged.

Since in our opinion the evidence is insufficient to sustain the verdict to the jury, this cause is reversed with directions to grant the appellant's motion for new trial.

Arterburn, Jackson & Myers, JJ., concur. Achor, J., not participating.

NOTE.—Reported in 217 N. E. 2d 154.