## THE STATE OF CONNECTICUT *vs.* MICHAEL LEVINE.

Second Judicial District, Norwich, April Term, 1907.

BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

One to whom a lost bank check has been handed by the finder for delivery to the owner, may be guilty of larceny in subsequently appropriating it to his own use, although at the time he received it he did not intend to steal it but to turn it over to its owner. Under such circumstances the check will be deemed to have been first "taken and carried away" from the constructive possession of the owner, when it was feloniously appropriated by its temporary custodian.

The same rule applies to a felonious conversion of goods by a servant to whom they have been entrusted.

In the present case the accused, having inspected the lost check for the purpose of ascertaining its owner, falsely and fraudulently represented that he expected the owner to call at his store that day, when the check would be given him, and thereby induced the finder of the check to leave it in his hands. *Held* that if he accepted this agency and the accompanying possession of the check with the felonious intent to appropriate it or its proceeds to his own use, the very act of acceptance constituted "a taking" and the first taking of the check from the constructive possession of its owner.

A person who receives a check for the sole purpose of a brief inspection has only the bare custody and not possession of it.

The cases of *Ransom* v. *State*, 22 Conn. 153, and *State* v. *Fairclough*, 29 Conn. 47, distinguished.

Argued April 30th—decided May 14th, 1907.

INFORMATION for larceny of a bank check, brought to the Superior Court in New London County and tried to the jury before *Shumway, J.;* verdict and judgment of guilty, and appeal by the accused. *No error.*

*William H. Shields* and *John H. Barnes,* for the appellant (the accused).

*Hadlai A. Hull,* State's Attorney, for the appellee (the State).

BALDWIN, C. J.  It was undisputed on the trial of this case that the check in question, which was drawn on a New York bank and bore the endorsement of the name of the payee, one Skawinski, was received by the defendant at a store which he kept in Colchester, from one Rosen. The State offered evidence tending to prove that the check had been lost in the course of its transmission by mail to Skawinski; that it had come into the possession of a Mrs. Train, who had put it in Rosen's hands with a request that he find the owner; that Rosen handed it to the defendant, asking if he knew the owner, whereupon the defendant handed it to his daughter, who told him the name of the payee; that the defendant then made to Rosen, in the presence of two witnesses, Sush and a young woman, the false and fraudulent representation that he expected the payee to call at his store that day and would then give it to him; that Rosen, in reliance on this statement, left the check with the defendant and his daughter, who placed it in the money drawer of the store; and that afterward the defendant deposited it to his own credit in a bank in Norwich, and collected and converted it to his own use, well knowing that he had no right to it.

The defendant offered evidence tending to prove that Rosen asked him to cash the check; that he consented, paying him part in cash and Rosen buying goods to the amount of the balance; and that Sush and the young woman were not present at the time.

The defendant requested the court to tell the jury that, to warrant a conviction, they must find that at the time he accepted the check he formed the intent to appropriate it to his own use.  Instead of this, the court instructed them that if the defendant knew when he took the check, or knew soon after he took it, that it belonged to Skawinski, and then converted it to his own use or took the proceeds of it, he was guilty of larceny.  They were also charged that while ordinarily, to constitute larceny, a felonious intent to convert the thing taken to the taker's use, without the owner's consent, must exist at the time of the taking,

for the purpose of the case on trial, should they find the facts to be as claimed by the State, the rule of law pertaining to lost property applied, namely, that although the act by which the finder assumes control of it may not be a trespass, and he may pick it up with no intent to steal it, yet that if such an intent be formed later, and after the property actually came into his possession, on his appropriating it to his own use by assuming actual dominion over it, knowing or having reasonable means of knowing the owner, and meaning to deprive him of his property, the crime of larceny is committed.

The jury having returned after a consultation of an hour or two with a request for further information as to what constituted larceny and theft, the court, after instructing them that these terms were synonymous, gave this additional charge:—

" It seems to me the only question is, whether you believe the story which Rosen and Sush have told you, which was, that they informed Levine that that was a lost check, that Levine said he knew to whom it belonged, and that the owner was to be there that day and that he would give it to him. If you believe that story why, it seems to me, you should convict the accused; but if you believe the story that the accused tells, that he, Rosen, approached him and asked him to cash the check and Levine said, 'No, I haven't the money: take it into the store and my wife or daughter will cash it for you:'—if, under those circumstances he did take the check and deposit it to his own account, taking it and not knowing that it was lost or that Rosen hadn't any title to it, and if he did not know anything about how Rosen came by the check (as in its form it was negotiable, transferable by delivery, it did not require any further endorsement, in law, to pass title),—if he did not know it was a lost check,—simply told Rosen to go in and get the money,—he had a right to deposit the check in his own bank account; and even if he did afterwards learn that it was stolen or was a lost check, perhaps he might have been liable to refund the money, but

he would not be liable for theft. . . . If Levine simply cashed that check for Rosen I do not think he ought to be convicted for theft, but if he took the check knowing that it was lost, informing himself who the owner was, and he knew that he had no title to it, and afterwards appropriated it to his own use, he is guilty of theft."

The evidence offered by the State tended to prove that Rosen handed the check to Levine, inquiring whether he knew the owner; that Levine passed it over to his daughter; and that she told Levine the name of the payee; after which he made a fraudulent representation which caused Rosen to leave the check in her hands. If these were the facts, the possession remained in Rosen until after the fraudulent representation was made. He handed it to Levine to look at. Levine handed it to his daughter that she might look at it. It was from her that Levine learned what was the name of the person in whose favor it was drawn. It was by a fraudulent representation which he then made to Rosen that the latter was induced to leave it in her hands.

It is plain that Levine committed no trespass, when he first took the check from Rosen. When he passed it over to his daughter it was presumably for the legitimate purpose of ascertaining who the owner was. If the jury found that subsequently, upon receiving information as to this, he made a false and fraudulent representation to induce Rosen to leave the check at the store, and that, having been thereupon so left, it was converted by Levine to his own use, he was guilty of larceny.

He had, at first, the bare, temporary, and lawful custody of the check for a certain purpose. This purpose fulfilled, his fraudulent representation resulted in its coming into his possession as the subagent of Mrs. Train to deliver it to Skawinski. If he accepted this agency and the accompanying possession of the check with the felonious intent to appropriate it or its proceeds to his own use, the act of acceptance constituted a taking, and the first taking, of the check from the constructive possession of the owner.

It remained in Skawinski's constructive possession, while in the custody of Mrs. Train. *Ransom* v. *State*, 22 Conn. 153, 158. No change of this possession could be wrought by her handing it to Rosen, nor by his handing it to the defendant, nor by the defendant's handing it to his daughter; each of these acts being in strict subordination to the title of the owner. The wrong to Skawinski would date from the fraudulent acquisition by Levine of the custody of the check for delivery to the rightful owner, with the secret intent to appropriate it to his own use. But larceny would have been committed also, had he accepted the custody of the check for delivery to Skawinski, in good faith, and subsequently appropriated it to his own use with felonious intent. His custody of the check as an agent for its delivery to Skawinski would have left it, in law, still in the latter's possession, and that possession would have been first invaded by the wrongful appropriation to his personal benefit. Whenever that was made, the check would have first been taken and carried away. *Williams* v. *State*, 165 Ind. 472, 75 N. E. 875, 2 L. R. A., N. S., 248; *State* v. *Anderson*, 25 Minn. 66, 33 Amer. Rep. 455; *People* v. *Call*, 1 Denio, 120, 43 Amer. Dec. 655. So in the case of a felonious conversion of goods by a servant to whom they have been intrusted, larceny may be committed, although the intention to convert them was not conceived until after they had come into his keeping. *State* v. *Fairclough*, 29 Conn. 47, 49. His custody remains that of his master until he assumes an antagonistic and criminal position by the act of wrongful appropriation, and thus for the first time takes the goods away from what in law has been their owner's possession.

The charge of the trial court, taken as a whole, correctly stated the rules of law on the points above considered, so far as was necessary for the proper disposition of the cause. It would have served no useful purpose to bring to the attention of the jury the technical distinctions that might be raised between a bare custody of goods, and their possession, or between actual possession and constructive posses-

State *v.* Levine.

sion. The vital question was whether the transaction between Rosen and Levine was as Rosen stated it or as Levine stated it; and this was plainly put before the jury in terms which they could not fail to comprehend.

The defendant contends that the positions on which our judgment is founded are inconsistent with those taken in the cases above cited of *Ransom* v. *State*, 22 Conn. 153, and *State* v. *Fairclough*, 29 Conn. 47.

In the former we held that the charge of the trial court was erroneous because it withdrew from the jury (p. 161) the question on which the guilt of the accused depended, namely, whether the lost pocket-book, which he found on the highway, was originally taken by him with a felonious intention; and allowed them to find him guilty although he first took it honestly, intending to return it to the owner, but subsequently changed his mind, and resolved not to restore it but to convert it to his own use. In the cause now before us the taking by the defendant which the State relied on as felonious was not his original taking of the lost check into his hands. That, it was conceded, was a lawful and innocent act. The felonious intent, if any, came later, when, having been informed of the name of the payee, and thus having notice of a fact which might naturally lead to the discovery of the owner, he changed his attitude in such a way as to amount to a new taking, resolved to withhold it from him, and appropriated it to his own use.

In *State* v. *Fairclough*, a conviction of larceny was upheld, where the jury were told that if the defendants received a package of goods upon an agreement to transport it to a neighboring town and there deliver it to the owner, and on the way broke the package with felonious intent and converted the contents in whole or part, they might be found guilty. We observed that if regarded as servants of the owner, they would be plainly chargeable with larceny, under such circumstances; and that, if regarded as bailees, the wrongful breaking of the package and abstraction of the contents would terminate the bailment,

State *v.* Levine.

divest them of the special property in the goods incident to the relation of bailee, and thus leave them in no better situation than if they had been originally servants.

The only substantial distinction in law between servants and agents is that the main function of the agent is to alter his principal's relations to third persons, while that of the servant is to execute his master's orders. "An agent represents his principal in an act intended, or calculated, to result in the creation of a voluntary primary obligation or undertaking. A servant represents his master in the performance of an operative or mechanical act of service not resulting in the creation of a voluntary primary obligation, but which may result, intentionally or inadvertently, in the breach of an existing one." Huffcutt on Agency, § 4. An agent, in other words, is to perform acts primarily intended or adapted to cause a change in the legal relations of third persons to his principal. A servant is to perform acts not primarily intended or adapted to cause a change in the legal relations of third persons to his master. The agent creates new relations : the servant acts upon existing relations. Ibid. § 6. In the case at bar A (that is, Mrs. Train or her agent Rosen) having in his hands goods of B, entrusts them to C (the defendant) to deliver to B. C is not thus empowered to alter A's relations to B or to anybody else. He is simply to perform a particular service, which A owes to B. He is therefore the servant of A. But whether the defendant in the present case be called servant or agent, with respect to the relations assumed by him to Rosen or through Rosen to the owner of the check, can have no important bearing on the consequence of his repudiation of the duties which those relations involved. In neither case would he have any special property in the check. In each his possession of it, so long, and so long only, as it was held as agent or servant, would be the possession of its owner.

There is no error.

In this opinion the other judges concurred.