THE STATE OF CONNECTICUT *vs.* JULIA E. COURTSOL.

Third Judicial District, New Haven, June Term, 1915.

THAYER, RORABACK, WHEELER, BEACH and BENNETT, Js.

Even lost property may be the subject of larceny, and *a fortiori* property which has been merely mislaid.

In the present case a package containing bank bills amounting to over $1,100, was inadvertently left by its owner on the seat of a trolley-car and was picked up and taken away by the accused, a fellow passenger, who testified that she did so in the belief, at first, that it was her own package. The owner, recalling where he had left the money, speedily sought the package and discovered that the accused had taken it from the car. *Held* that there was no evidence that the package, technically speaking, was lost or abandoned property, and therefore no basis for a request to charge the jury upon that subject; and that inasmuch as the facts were undisputed, the trial court properly treated the case as one of property mislaid.

The constructive possession of mislaid property remains in the owner, notwithstanding its actual custody may be in another, in whose shop or car it has been left. Accordingly, if the finder of such property, knowing it to be mislaid or left by mistake, takes it with felonious intent to appropriate it to his own use and thus deprive the owner of it, he is guilty of larceny.

Even though the original taking by the finder of mislaid property was by mistake and without felonious intent, he nevertheless becomes guilty of larceny if, upon discovering that the property belongs to another whose identity he knows or has the means of knowing, he then forms and acts upon the felonious intent to deprive the owner of it by appropriating it to his own use; for this constitutes a new and felonious taking.

The fact that the property which was the subject of the larceny was mislaid and not lost, implies that means were at hand for ascertaining its owner. ·

Argued June 2d—decided July 16th, 1915.

INFORMATION for theft, brought to the Superior Court in New Haven County and tried to the jury before *Gager, J.;* verdict and judgment of guilty, and appeal by the accused. *No error.*

*Charles F. Roberts* and *Charles J. Martin,* for the appellant (the accused).

*Walter M. Pickett,* Assistant State's Attorney, for the appellee (the State).

THAYER, J. The accused was a passenger on a trolley-car operated by a common carrier in New Haven, when the complainant entered the car and took a seat upon the same bench or seat with and about a foot from her. He had in his possession at the time a package of money carefully done up in brown paper, with a rubber band around it. This was seven or eight inches in length and three or four inches in width and thickness, and contained two hundred and eighty-eight bank bills of various denominations, of the value of $1,107, and $28.64 in change—silver quarter dollars, nickels and pennies. There was no name or mark upon the package indicating to whom it belonged. The complainant also had in his possession at the time another larger and more cumbersome package, and after he was seated he placed the first-named package upon the bench in the vacant space between himself and the accused. He left the car before the accused did, and inadvertently left the package of money upon the bench where he had placed it. After he left the car the accused picked up the package and took it with her

when she afterward left the car. Soon after leaving the car she placed the package in a hand-bag which she had with her. She later, after reaching her destination, opened the hand-bag and tore off a portion of the covering of the package, and discovered that it contained some greenish papers, but did not take them from the package until she had returned to her home by the trolley. At her home in the evening she opened the package and found that it contained a large sum of money, which she at once made into two packages and took to an ice factory adjoining her home, in which her son was employed, and there placed them in the drawer of a desk. She did not notify the trolley company or its employees, or any one else, that she had found and picked up the package. In the evening of the day it was lost her son read to her an account of the loss, which was published in an evening paper, giving the name and residence of the complainant as the one who had lost the package, and stating that an advertisement offering a reward for its recovery had been published. The following afternoon the complainant, his son and a detective, called upon the accused and inquired of her whether she was upon the car when the package was left, and if she saw and picked up the package. She admitted that she was upon the car, but said that she had not seen or taken the package. In the evening of the same day the same detective and an officer with a warrant for her arrest called at her house, and she again denied that she had taken the package. She was then arrested and taken to the station-house. When about to be locked up she told the officers that she did not have the money in her possession, but knew where it was, and if they would take her to her home she would get it for them. She was then taken to her home, and there turned over all the money in two packages to the officers.

The accused testified and claimed that before she entered the car she had made several small purchases, which were done up in one package and wrapped in brown paper; that this package was of about the same size and appearance as the one which she took from the bench, and that when she saw the latter at her side she supposed it to be the one containing her purchases, and so picked it up and placed it on her lap, where it remained until she left the car, when she placed it in the hand-bag. She also testified and claimed that, when questioned by the complainant and detective on the following afternoon and by the officers in the evening about the package, she did not know who the persons were who were questioning her, or that they had any authority to make the inquiries.

The State claimed to have proved that the accused did not at first pick up the package from the bench, but drew it toward her and under her dress and left leg, and that later she took it up and carried it from the car. It also claimed to have proved that before she was questioned the following day by the complainant and the detective and officer, she had been informed of their names; that she recognized the complainant as the person who was seated beside her on the trolley-car, and was told that he owned the package and that it was valuable.

Counsel for the accused asked for an instruction that if the jury should find that the package was lost or abandoned by the owner, and was taken by the accused in the honest belief that it was the package which she had previously purchased, or one which in fact had been lost or abandoned by the owner, then there was no unlawful taking of the package, and the accused should be acquitted.

The court properly refused this instruction. It is well settled in this State that lost property may be

the subject of larceny. *Ransom* v. *State*, 22 Conn. 153, 160. If the accused took up the package in question honestly believing that it had been lost by the owner, but took it, knowing or having the means of ascertaining the owner, with the felonious intent to convert it to her own use at all events and deprive the owner of it although he should thereafter be discovered, the taking was unlawful and she would be guilty of larceny. 2 Bishop on Criminal Law, §§ 881, 882; *Ransom* v. *State*, 22 Conn. 153, 160; *Brooks* v. *State*, 35 Ohio St. 46, 49. The requested instruction, therefore, was not warranted by the law, for according to the request the accused would escape punishment, although she feloniously appropriated the lost property, knowing or having the means of ascertaining the owner of it.

But, had the request been sound in its law, it was properly refused upon another ground. There was no evidence to support counsel's claim that the package was lost. The evidence shows that it was left upon a public conveyance by its owner upon a bench or seat where he had placed it. He remembered where he left it, and speedily sought it, and found that the accused had taken it. It is well settled that property so left is not lost, but is mislaid property. The owner is treated as still constructively in possession of it, although its custody may be in another in whose shop or car it has been left. 2 Wharton on Criminal Law (11th Ed.) § 1139; 2 Bishop's New Criminal Law, §§ 878, 879; *People* v. *M'Garren*, 17 Wend. (N. Y.) 460, 462; *State* v. *McCann*, 19 Mo. 249, 254. The accused herself did not claim that she supposed the property had been lost. She took it up, believing it to be her own package containing purchases previously made by her. When she discovered that it was not, she knew that it was a package left upon the car by some person who undoubtedly would call upon the trolley company

for it. The court, therefore, properly refused to give an instruction which would give the jury to understand that upon the evidence they might find that the package was lost, and that the accused when she picked it up honestly believed that it was a lost package.

As the facts were undisputed, the court was correct in giving the instruction which the accused complained of in her sixth assignment of error, namely: "This case that you have before you is not a case of lost property, technically speaking, that is, actually lost or abandoned; but is a case, as the books and cases describe it, of property that is mislaid."

The instruction complained of in the seventh reason of appeal was also correct. As already stated, the constructive possession of mislaid property remains in the owner. The finder of such property, knowing it to be mislaid or left by mistake, if he takes it with the felonious intent to appropriate it to his own use and thus deprive the owner of it, is guilty of larceny. This would constitute a felonious taking from the possession of another of property belonging to him. This was the substance of the instruction complained of. The language which followed explained the distinction between the finding in such a case and one where the property has been lost.

The court, by an instruction which is questioned by the eighth assignment of error and also by a subsequent instruction, told the jury, in substance, that although the original taking of the package may have been by mistake, as the accused claimed, and without felonious intent, if she later, and after she knew that the package belonged to another, and knew or had the means of knowing who the owner was, formed and acted upon the felonious intent to deprive the owner of it by appropriating it to her own use, this would constitute a new and a felonious taking, and the ac-

cused would be guilty of larceny. The court was speaking of mislaid goods, having told the jury that the case related to such, and not to lost goods. The accused acquired no special property in the mislaid package, if she picked it up by mistake, supposing it to be her own. The owner was still constructively in possession of it. She became a mere custodian of it for him, and when she found that it was not her property it was her duty to hold it for and return it to the owner. If, instead of this, she formed and acted upon the felonious design to deprive him of it and convert it to her own use, this was a taking from his possession and constituted larceny. "Where one having only the care, charge, or custody of property . . . converts it *animo furandi*, it is larceny." 2 Wharton on Criminal Law (11th Ed.) § 1196; *State* v. *Levine*, 79 Conn. 714, 718, 66 Atl. 529.

The ninth assignment of error is not a proper one to raise the question which, it would appear from the brief of the accused, was intended to be raised by this assignment. The purpose seems to have been to raise the question whether there can be a taking of mislaid property from the possession, actual or constructive, of the owner, unless the party taking it knows or has the means of knowing at the time of the taking who the owner is. The fact that the property is mislaid and is not lost, implies that means are at hand to know or learn who the owner is. The court told the jury that, upon the undisputed evidence, this was a case of mislaid property, and that if the accused took it with the felonious intent to appropriate it and deprive the owner of it, she was guilty. No further instruction upon this part of the case was necessary.

There is no error.

In this opinion the other judges concurred.